Mitchell D. Schweitzer, J.
Petitioner landlord instituted this article 78 CPLR proceeding for review of the City Rent and Rehabilitation Administrator’s determination which denied applications for certificates of eviction pursuant to section 57 of the City Rent, Eviction and Rehabilitation Regulations. The tenants involved have intervened in the proceeding.
■Section 57 of the City Rent Regulations, “ Alteration or remodeling ”, provides, in pertinent part:
“ a. A certificate or an order authorizing subdivision shall be issued where the landlord seeks in good faith to recover possession of a housing accommodation for the immediate purpose of substantially altering or remodeling it * * * No certificate or order authorizing subdivision involving alteration or remodeling shall be granted under this section unless the Administrator shall find:
“ (1) That such alteration or remodeling is for the purpose of subdividing an under-occupied housing accommodation containing 6 or more rooms ”.
The critical issue for decision by the Administrator and, hence, for consideration upon this review, is the classification of one area in each of the apartments concerned, for without inclusion of this area as a room each of the housing accommodations contains five rooms within the context of section 57 of the regulations.
After independent investigation and conferences, the Administrator concluded that the “ disputed area is not a * room ’ within the meaning and intent of section 57 of the Regulations and to count it as such for the purposes of the instant proceeding would be inconsistent with the purposes of the Rent Law and Regulations. ’ ’
Section 57 of the regulations prescribes a plan for recovery of an underoccupied apartment by a landlord who wishes to subdivide it into additional housing. The regulation defines the term ‘ underoccupied ’ specifies minimal size for an apartment which shall be subject to recapture, and defines generally who shall be counted as an occupant. Detailed provisions are made for payment of stipends and for other benefits to ameliorate the problems of resultant tenant ouster. Room count and occupant count together form the touchstone of this regulation. The term “ room ” in this context is, however, nowhere defined in the regulation or the local law, even though what shall constitute a “ room” has been the subject of much litigation, almost from the outset; and, in its course, the regulation has been extensively revised by successive administrators.
*166 It appears reasonable to assume that the Administrator intended that the term “ room ” shall be given its usual common meaning. Concededly, it is within his discretion to construe the term “room” in a given set of circumstances. However, any such construction must be reasonable and grounded on some objective standards; and such construction should, of course, accord with the purposes for which the regulation was enacted. It has been held, in the context under review herein, that it is reasonable that the term “ room ” shall be given that meaning which other municipal agencies, primarily concerned with its characterization, have given it definition (Matter of Jaffe v. McGoldrick, 285 App. Div. 889).
In the instant case, the Department of Buildings has unequivocally stated that the space in question was a legal room; and the architect who testified for the tenants stated that he could not challenge that statement. While the respondent is not conclusively bound by such statements of other administrative agencies, nevertheless, absent some substantial proof to the contrary, or other reasonable considerations, those statements should be given persuasive weight (Matter of Jaffe v. McGoldrick, supra). The bare observation that the space is too “ small ” to be defined as a “ room ” is not a sufficient guide in and of itself. In Matter of Kellogg (Weaver) (N. Y. L. J., Dec. 6, 1956, p. 6, col. 1 [Nathan, J.]), the Administrator’s ruling was upheld that space in an apartment, 6 feet 6 inches by 11 feet, is to be counted as a room, though the tenants claimed it to be too “ small” for use. In Rosin v. McGoldrick (279 App. Div. 1080), a similar administrative ruling that a “porch”, 7 feet by 9 feet, constituted a “ room ” was upheld. In Soubasis v. Finhelstein (82 N. Y. S. 2d 465 [Beldock, J.]), the court reversed an administrative ruling that a ‘ very narrow structure, about 4% feet in width by 10% feet in length * * * cannot be called a living room.” “ Small ” areas or those which did not strictly comply with current updated housing standards (though legal when constructed) have likewise been upheld as includable in the “ room count.” (Geddes v. McGoldrick, N. Y. L. J., Feb. 2, 1953, p. 364, col. 2 [Botein, J.] [a dressing room]).
Judged by these considerations, the apartments in question appear to be underoccupied. At the very least, they are on the threshhold of underoccupancy. It is to be expected that apartments of six or seven rooms, occupied by only two people, as here, are likely to result in minimal use or even nonuse of the least desirable space, as these small rooms undoubtedly are. Nevertheless, such minimal use or nonuse does not destroy *167 the character of that space as a “ room ”, if it is so defined by usual and normal standards. Indeed, the salutary purpose of the regulation appears to be to restore to the rental market outmoded and, to that extent, unusable, space in an apartment where such condition (small size) makes the room unusable, even though legal.
Accordingly, the application is granted to the' extent that this matter is remanded to the respondent for further consideration not inconsistent with this opinion.